***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments before the Full Commission. The parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. This claim is the subject of a February 25, 2002 Full Commission Opinion and Award which is incorporated by reference as if fully set forth herein.
3. The August 8, 2001, Transcript of Evidence and all depositions related to the February 9, 2001, hearing before Deputy Commissioner Gheen in this claim are admitted by stipulation.
4. At the hearing before Deputy Commissioner Deluca, the parties submitted Commission proceedings since February 25, 2002 and an Opinion and Award consisting of 57 pages, which was admitted as Stipulated Exhibit 2; Commission proceedings in I.C. No. 014249 between the same parties consisting of 4 pages, which were admitted as Stipulated Exhibit 3; plaintiff's medical records consisting of about 74 pages, which were admitted into evidence as Stipulated Exhibit 4; rehabilitation reports by M. Hayes Associates consisting of 152 pages, which were admitted as Stipulated Exhibit 5; rehabilitation reports from January 19, 2004 through January 13, 2005, consisting of 46 pages, which were admitted into evidence as Stipulated Exhibit 6; and medical records from Carolinas Pain Institute consisting of four pages, which were admitted into evidence as Stipulated Exhibit 7. Plaintiff's exhibits 1-10 and defendants' exhibit 1 were admitted into the record as well.
5. The issues before the Full Commission are:
 a. Is the February 25, 2002 Opinion and Award a "final award" and, if so, is plaintiff entitled to an award of permanent total disability benefits based on a change of condition for the worse under N.C. Gen. Stat. §§ 97-29 and/or 97-47? *Page 3 
 b. Did defendants have reasonable grounds for unilaterally terminating plaintiff's total disability compensation benefits on December 1, 2005 without prior Commission involvement or approval?
 c. Is plaintiff entitled to reinstatement of total disability benefits retroactive to December 1, 2005?
 d. Is plaintiff entitled to a 10% late payment penalty for all compensation benefits not timely paid in the period beginning December 1, 2005 until timely paid?
 e. Is plaintiff entitled to be awarded attorney's fees to be paid by defendants as part of the costs for violation of the provisions of N.C. Gen. Stat. § 97-88.1?
 f. Is plaintiff entitled to ongoing medical compensation, including medication for the rest of her life, and possibly a dorsal column stimulator?
 g. Is plaintiff entitled to have Commission approval of her care by pain specialist Dr. Richard Rauck and/or her primary care physician Dr. Lisa Petri?
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before Deputy Commissioner Deluca, plaintiff was 34 years old and was born November 21, 1971. She completed the eleventh grade and has no special skills or *Page 4 
training. Plaintiff's employment history from 1989 through 1994 includes working for various textile manufacturers in Mount Airy, North Carolina as an unskilled laborer whose primary duties consisted of using her hands to perform repetitive motions making garments or folding socks.
2. From September 1995 to 2000, plaintiff worked for defendant-employer as a sock folder. Her normal and usual duties consisted of repetitive use of her hands to fold and band together approximately 2000 pairs of socks per day.
3. From late August 2000 through April 11, 2002, plaintiff worked the light duty position of "dotting bags," during which time defendants denied her claim for bilateral carpal tunnel syndrome. The condition of her hands grew worse during this period.
4. The February 25, 2002, Opinion and Award by the Full Commission awarded compensation to plaintiff for partial disability from February 24, 2000 until further order of the Commission, subject to the statutory 300 week limitation. It also awarded medical treatment to plaintiff and attorney's fees to plaintiff's attorney.
5. Plaintiff was unable to work from April 12, 2002 through October 27, 2003, due to pain, swelling, tingling and numbness as a result of her bilateral carpal tunnel syndrome. Defendant-employer paid plaintiff temporary total disability benefits from April 12, 2002 through October 27, 2003.
6. On April 15, 2002, Dr. Anthony DeFranzo performed a right carpal tunnel release on plaintiff's right median nerve that was severely compressed and crushed in an hourglass deformity due to the severity of plaintiff's carpal tunnel syndrome, which became worse due to the long delay in her receiving surgery. *Page 5 
7. On April 29, 2002, defendant-carrier filed a Form 60 informing the Industrial Commission that defendant-carrier paid temporary partial disability benefits to plaintiff from August 27, 2000 through March 2, 2002.
8. In April or early May 2002, defendant-carrier filed a Form 62 notifying the Industrial Commission and plaintiff that beginning April 12, 2002, it was modifying plaintiff's disability compensation from temporary partial disability benefits to temporary total disability benefits, at the rate of $239.36 per week, because plaintiff underwent a right carpal tunnel release.
9. Plaintiff's right wrist surgery initially provided her some improvement but her condition slowly grew worse and was characterized by severe pain and weakness, as well as some swelling.
10. On September 9, 2002, Dr. DeFranzo performed a left carpal tunnel release on plaintiff's wrist. This surgery provided some improvement for plaintiff's left carpal tunnel syndrome.
11. A January 20, 2003 ultrasound of plaintiff's right median nerve revealed that her nerves and tendons were stuck in scar tissue and not moving through her carpal tunnel as they should be with finger and wrist movements. Plaintiff was unable to use her right hand to perform work activities due to severe pain and weakness. Physical therapy made her condition worse.
12. On April 17, 2003, plaintiff continued to have significant diminished left hand grip strength and weakness. Plaintiff reached maximum medical improvement to her left hand from her left carpal tunnel syndrome, retaining a permanent partial disability of 15% to her left *Page 6 
hand. Plaintiff was released to return to work at light duty, with non-repetitive use of her left hand and a 10-pound weight limit.
13. In April 2003, Dr. DeFranzo felt plaintiff needed to see a pain specialist to treat her severe right hand pain condition. Defendant-carrier arranged for plaintiff to be treated by pain specialist Dr. Stuart Meloy.
14. Plaintiff saw Dr. Meloy on six occasions from May 8, 2003 through August 22, 2003. Dr. Meloy provided plaintiff with a series of three ganglion nerve blocks, as well as various medications to try to help improve her right hand pain condition; however, the treatment provided only temporary improvement. Dr. Meloy diagnosed plaintiff's pain condition as chronic regional pain syndrome of her right upper extremity, resulting from her right carpal tunnel syndrome. Dr. Meloy referred plaintiff back to Dr. DeFranzo for further surgical evaluation of her right hand.
15. On September 25, 2003, Dr. DeFranzo recommended a neurolysis procedure in which he would try to free plaintiff's nerves that were entrapped by scar tissue at her right carpal tunnel.
16. Defendant-employer provided plaintiff and Dr. DeFranzo with a proposed job description of a "packing clerk assistant," which could be performed using only one hand, with no lifting over 10 pounds. Dr. DeFranzo authorized plaintiff to try this position and plaintiff agreed to do so.
17. On October 27, 2003, plaintiff returned to work at defendant-employer as a packing clerk assistant as part of a trial return to work effort under the provisions of N.C. Gen. Stat. § 97-32.1. *Page 7 
18. Beginning on October 27, 2003, defendants ceased paying plaintiff the temporary total disability compensation benefits which had commenced on April 12, 2002 and resumed paying plaintiff temporary partial disability compensation benefits under N.C. Gen. Stat. § 97-30, as required by the provisions of N.C. Gen. Stat. § 97-32.1.
19. Defendants failed to file a Form 28T as required by Industrial Commission Rule 404A(1) concerning this trial return to work.
20. Defendants arranged for a second opinion concerning additional right wrist surgery. On November 11, 2003, Dr. Gregg Cregan, hand surgeon, evaluated plaintiff's condition and also recommended repeat right wrist surgery for plaintiff by Dr. DeFranzo.
21. By January 10, 2004, the parties agreed that plaintiff's trial return to work effort at defendant-employer was unsuccessful. Plaintiff was not required to provide defendants with a Form 28U signed by an authorized physician under I.C. Rule 404A(2)-(4).
22. Effective January 11, 2004, defendants resumed paying plaintiff total disability compensation benefits under N.C. Gen. Stat. § 97-29, as required by the provisions of N.C. Gen. Stat. § 97-32.1. At that time, defendants failed to file a Form 62 notifying the Commission and plaintiff that they were resuming paying temporary total disability compensation benefits.
23. On January 12, 2004, Dr. DeFranzo performed a repeat carpal tunnel release and neurolysis of plaintiff's right median nerve. The surgery failed to improve plaintiff's severe pain condition.
24. Defendant-employer again offered plaintiff the packing clerk assistant position in May 2004 and also offered her a job as a finishing inspector. Plaintiff did not attempt to work in either position. *Page 8 
25. By July 2004, plaintiff reached maximum medical improvement in her right upper extremity due to her right carpal tunnel syndrome, retaining a permanent partial disability of 30% to her right hand.
26. By at least July 2004, plaintiff's right carpal tunnel syndrome resulted in chronic or complex regional pain syndrome of her right upper extremity characterized by extreme sensitivity to cold air or air flow, touch, and intolerance to most pain medications. Her chronic regional pain syndrome resulted in constant severe pain that interfered with her ability to concentrate and use her right hand to perform work duties.
27. From January 2005 through June 2005, plaintiff saw Dr. Meloy on six occasions. Dr. Meloy prescribed various pain medications that did not improve plaintiff's pain condition in her right upper extremity. Dr. Meloy recommended a spinal cord stimulator, but plaintiff refused that treatment. On June 21, 2005, Dr. Meloy released plaintiff from his care.
28. From December 29, 2004 through June 2005, plaintiff tried to find employment with the assistance of a vocational rehabilitation specialist employed by defendants. Plaintiff sought employment as a greeter, hostess, retail sales clerk, hotel or motel clerk, cleaner clerk, and security guard. Plaintiff also attended education classes at Surry Community College to obtain her GED. Plaintiff has attempted to receive her GED for the last two years. Plaintiff could go to a structured class with a teacher but plaintiff acknowledged she did not sign up for a structured class. The vocational rehabilitation counselor recommended that it would be more beneficial to plaintiff for her to participate in a structured class.
29. The vocational rehabilitation counselor noted in plaintiff's vocational report that she was concerned about plaintiff's motivation to find a job. Some reasons for this concern included plaintiff's unwillingness to do volunteer work and plaintiff's use of fictitious references *Page 9 
on a sample job application. Plaintiff believed that the references did not need to be real because the application was a sample.
30. In late June 2005, defendants instructed the rehabilitation nurse provider to close its file concerning plaintiff. In August 2005, defendants instructed the vocational rehabilitation provider to close its file concerning trying to help plaintiff find employment.
31. On June 30, 2005, Dr. DeFranzo saw plaintiff and noted that her chronic regional pain syndrome was not improved. Plaintiff told Dr. DeFranzo that Dr. Meloy had released her from his care. Dr. DeFranzo felt plaintiff needed to have treatment by a pain specialist, so he referred her to Dr. Richard Rauck.
32. From August through November 2005, plaintiff repeatedly requested that defendants approve treatment by Dr. Rauck for her right upper extremity pain condition treatment, but defendants refused to pay or authorize Dr. Rauck to evaluate plaintiff. Plaintiff also tried to get help for her pain from her primary physician, Dr. Lisa Petri, whom defendants also refused to pay or authorize to treat plaintiff's pain.
33. In August 2005, defendants sought Dr. DeFranzo's approval for plaintiff to try to perform the job of finishing inspector at defendant-employer, which involved use of both hands. Dr. DeFranzo testified that this job was not suitable for plaintiff because the job required use of both hands. Plaintiff was unable to attempt the job.
34. Effective December 1, 2005, defendants unilaterally terminated plaintiff's temporary total disability compensation benefits without prior Industrial Commission approval. Defendants thereafter asserted to the Executive Secretary and to Deputy Commissioner Deluca that they did not need prior Commission approval because the Full Commission had ordered and defendants had been paying plaintiff temporary partial disability compensation benefits under the *Page 10 
Commission's February 25, 2002 Opinion and Award. December 1, 2005 marked the end of the 300-week period allowed by statute for payment of temporary partial disability. However, as of December 1, 2005, defendants were not paying temporary partial disability, but had been paying plaintiff temporary total disability benefits since January 11, 2004.
35. In March 2006, defendants employed vocational rehabilitation specialist David Morgan to prepare an analysis of employment prospects located near plaintiff's home. Mr. Morgan identified open positions as a security guard for Security Forces, Inc. and as a front desk clerk for Best Western. Plaintiff applied for the security guard position, which declined to offer her employment. Plaintiff did not qualify for the front desk clerk position, which required the applicant to be computer literate and to have the use of both hands.
36. At his deposition, rehabilitation counselor Stephen Carpenter testified that in his opinion plaintiff was unlikely to obtain competitive employment. Mr. Carpenter noted that plaintiff's chronic pain would affect her concentration and recommended that when her pain was under control, she pursue a GED. Mr. Carpenter did not complete a market survey and testified that he was not familiar with the area in which plaintiff resides, as the primary work he handles in North Carolina is in the eastern part of the state. Mr. Carpenter did not contact any of the employers in the area in which plaintiff resides and never met with plaintiff or did any vocational assessment prior to stating his opinion.
37. Plaintiff sought a second opinion from Dr. Rauck on May 10, 2006. He diagnosed plaintiff with bilateral carpal tunnel syndrome and persistent right upper extremity forearm pain, with neuropathic pain features, as well as some symptoms of reflex sympathetic dystrophy or complex regional pain syndrome including allodynia to light touch. Dr. Rauck *Page 11 
prescribed Lyrica, but plaintiff was unable to tolerate it. Dr. Rauck recommended consideration of a spinal cord stimulator.
38. In his deposition, Dr. DeFranzo testified that plaintiff has some permanent damage to her median nerve and will likely need medication on and off, possibly permanently. Dr. DeFranzo stated that with modifications, plaintiff could go back to work. Dr. DeFranzo testified that plaintiff's left hand is stable and she may be able to work a security guard or desk job where she could keep her right hand protected, answer a telephone or do some tasks infrequently.
39. The Commission finds that plaintiff's complex regional pain syndrome of her right upper extremity is a result of her right carpal tunnel syndrome. As part of her pain syndrome, plaintiff suffers from constant, severe pain in her right upper extremity, which she is unable to use to perform any work activities. Her pain is genuine and interferes with her ability to concentrate on performing work duties. In addition, plaintiff experiences increased pain in her hand with increased use, inability to perform frequent or repetitive movements, inability to lift objects weighing more than 10 pounds, significantly diminished grip strength, persistent left hand weakness, and inability to use the left hand to operate a motor vehicle for longer than 15 minutes. Plaintiff has permanent work restrictions of left-handed work only, light duty with a 10-pound weight limit.
40. The Commission finds that because of her bilateral carpal tunnel syndrome, plaintiff has been unable to earn the same wages in the same or any other employment as she was earning at the time of her injury.
41. After the record before Deputy Commissioner Deluca closed, defendants filed a motion to require plaintiff to use a mail-order pharmacy for filling her prescriptions. Plaintiff *Page 12 
opposed this motion, citing her interest in working with a local pharmacy to assure timely, accurate filling of prescriptions and the ability to work with a pharmacist knowledgeable about her condition.
42. Defendants have made a motion for sanctions alleging that plaintiff's attorney argued evidence outside the record, asserted personal opinions and attributed unworthy acts or motives to opposing counsel in her brief on cross-appeal to the Full Commission.
43. Defendants have not defended this action without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 24, 2000, plaintiff sustained the compensable occupational disease of bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
2. The February 25, 2002, Opinion and Award by the Full Commission was not a final award within the meaning of the Workers' Compensation Act. N.C. Gen. Stat. § 97-86; Plummer v. Kearney, 108 N.C. App. 310,423 S.E.2d 526 (1992). To rule otherwise would have the effect of foreclosing plaintiff from litigating her disability issues further before she reached maximum medical improvement.
3. Plaintiff is not entitled to a presumption of ongoing disability based on the February 25, 2002 Opinion and Award of the Full Commission.Royce v. Rushco Food Stores, Inc., 139 N.C. App. 322, 330-331,533 S.E.2d 284, 289 (2000); Brice v. Sheraton Inn, 137 N.C. App. 131, 137,527 S.E.2d 323, 327-28 (2000). Plaintiff has the burden of proving the existence *Page 13 
of a disability and its extent. Knight v. Wal-Mart Stores, Inc.,149 N.C. App. 1, 7, 562 S.E.2d 434, 439 (2002).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
5. In the present case, beginning April 12, 2002 and continuing to the present, plaintiff has been unable to earn the same wages in the same or any other employment as she was receiving at the time of contracting her occupational diseases, except during the period of her trial return to work in late October 2003 through January 10, 2004. N.C. Gen. Stat. §§ 97-2(9); 97-19. *Page 14 
6. Beginning December 1, 2005, defendants violated the Act and North Carolina Industrial Commission Rules by unilaterally terminating payment of plaintiff's total disability compensation benefits without securing prior Commission approval for which sanctions are appropriate. N.C. Gen. Stat. §§ 97-18.1; 97-82; North Carolina Industrial Commission Rules 404 and 802; Shah v. Howard Johnson, 140 N.C. App. 58, 535 S.E.2d 577
(2000). Defendants failed to timely pay plaintiff total disability compensation benefits beginning December 1, 2005, and, as a result, owe plaintiff benefits at a rate of $239.36 per week since December 1, 2005, plus a 10% late payment penalty. N.C. Gen. Stat. § 97-18(g).
7. Plaintiff is entitled to receive total disability compensation benefits at a rate of $239.36 per week beginning December 1, 2005 and continuing until further order of the Commission. N.C. Gen. Stat. §97-29. Based upon the evidence of record, it is premature to find plaintiff permanent and total disabled until Dr. Rauck has had a reasonable time in which to bring plaintiff's chronic pain under control.
8. Defendants shall pay for all related medical compensation incurred or to be incurred as a result of plaintiff's bilateral carpal tunnel syndrome, including treatment for complex regional pain syndrome of her right upper extremity by the pain specialists at Carolinas Pain Institute, and treatment by Dr. DeFranzo to monitor the condition of her hands. If recommended by Dr. Rauck, plaintiff shall receive a spinal cord stimulator. N.C. Gen. Stat. §§ 97-25; 97-2(19).
9. Plaintiff has cited legitimate reasons for not wishing to use a mail order pharmacy and therefore should not be required to use a mail order pharmacy.
10. Plaintiff's argument in her brief on cross-appeal to the Full Commission is not deemed to have violated North Carolina Industrial Commission Rules 609(6) and 701(7). *Page 15 
11. Defendants did not defend this action without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
12. Because this matter was appealed by both parties, plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. With the filing of this Opinion and Award, defendants shall reinstate paying plaintiff total disability benefits at a rate of $239.36 per week retroactive to December 1, 2005, along with a late payment penalty of $23.94 for each payment not timely paid in the period since November 30, 2005.
2. Defendants shall pay for all related medical compensation incurred or to be incurred by plaintiff as a result of her bilateral carpal tunnel syndrome, including treatment for complex regional pain syndrome of her right upper extremity by the pain specialists at Carolinas Pain Institute, and treatment by Dr. DeFranzo to monitor the condition of her hands. If recommended by Dr. Rauck, plaintiff shall receive a spinal cord stimulator.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants' motion to require plaintiff to use a mail order pharmacy is DENIED. *Page 16 
5. Defendants' motion for sanctions pursuant to Rules 609(6) and 701(7) of the North Carolina Industrial Commission is hereby DENIED.
6. For the violation of the Act and the North Carolina Industrial Commission Rules by unilaterally terminating payment of compensation without Industrial Commission approval, defendants are hereby sanctioned $1,000.00 to be paid to plaintiff's counsel as reasonable attorney's fees.
7. Defendants shall pay all costs.
This the 12 day of June, 2007.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE MCDONALD COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1